**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 95-31091**
**Summary Calendar**
_____

**ARTISTS RIGHTS ENFORCEMENT CORPORATION,**

**Plaintiff-Counter Defendant - Appellee,**

**versus**

**HUEY P. SMITH,**

**Defendant,**

**MARGRETTE R. JAMES,**

**Defendant-Appellant.**

_____

Appeal from the United States District Court
for the Middle District of Louisiana
(92-CV-1073-A-M2)
_____

June 28, 1996

Before JOLLY, JONES and STEWART, Circuit Judges.

PER CURIAM:[*]

Margrette James appeals the decision of the district court annulling the transfer to her of rights to four songs written by Huey "Piano" Smith. Finding no reversible error, we AFFIRM.

**FACTS**

_____

[*]     Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

The facts underlying this appeal have a long and detailed history. Huey Smith has been a songwriter for many years. Four of his most popular songs were released in the 1950's. These songs are: "High Blood Pressure", "Don't You Just Know It", "Rockin' Pneumonia and Boogey Woogey Flu", and "Sea Cruise" ("the Songs").

In 1982, Artists Rights Enforcement Corporation (AREC) contacted Smith informing him that AREC had located several sources from which he was entitled to collect royalties. AREC offered its services to collect those royalties. In March 1982, Smith and AREC entered into an agreement wherein Smith agreed to pay AREC fifty percent of all sums realized as a result of AREC's collection efforts on his behalf.

AREC then successfully procured royalties belonging to Smith. Smith, however, eventually became dissatisfied with the collection arrangement, and in May 1984, unilaterally terminated the arrangement with AREC and instructed Cotillion Music, Inc., the payor of royalties, to pay him directly. Cotillion Music complied with Smith's request, and AREC thereafter did not receive its share of royalty payments.

AREC subsequently brought suit seeking payment. In March 1992, the district court found AREC entitled to

> fifty percent (50%) of all songwriter royalties paid, and which may become due and payable in the future, from all present and future owners and holders of the copyrights to the songs entitled "High Blood Pressure", "Don't You Just Know It", "Rockin' Pneumonia and Boogey Woogey Flu", and "Sea Cruise" ("the Songs"), since the last payment of songwriter royalties for the Songs to AREC.

2

*Artists Rights Enforcement Corp. v. Smith*, No. 89-723-A (M.D. La. March 6, 1992). In an unpublished opinion, this court affirmed, finding the terms of the Smith/AREC agreement clear, and that Smith could not unilaterally terminate the agreement. *Artists Rights Enforcement Corp. v. Smith*, No. 92-3307 (5th Cir. 1992). Subsequently, the district court entered a supplemental money judgment for AREC against Smith for the sum of $233,191.74.

Prior to the district court's decision in March 1992, two significant events occurred. First, in May 1990, Smith filed for relief under Chapter 13 of the Bankruptcy Code.[1] Second, on December 21, 1991, Smith transferred and assigned to James, his wife, all his rights to the Songs for the sum of $2,000.00. As a result of this transfer, James received payment of Smith's royalties from Cotillion Music, the owner of the copyrights.

On December 14, 1992, AREC filed suit against James and Smith seeking a judgment revoking the transfer and assignment made by Smith to James. Smith and James answered the complaint and asserted counterclaims. Following trial, for reasons assigned orally, the district court rendered judgment for AREC annulling the transfer and dismissing the counterclaims. James appeals.

## DISCUSSION

Louisiana law provides that creditors are entitled to annul particular acts of their obligors which cause or increase the

---

[1] The bankruptcy proceeding was ultimately dismissed.

3

obligor's insolvency. Article 2036 of the Louisiana Civil Code provides:

> An obligee has a right to annul an act of the obligor, or the result of a failure to act of the obligor, made or effected after the right of the obligee arose, that causes or increases the obligor's insolvency.

An obligor is determined to be insolvent "when the total of his liabilities exceeds the total of his fairly appraised assets." La. Civ. Code Ann. art. 2037.

AREC was an obligee of Smith. La. Civ. Code Ann. art. 2036 comment (f)("An obligee's claim does not have to be liquidated to judgment to be considered an anterior debt."); *see also Le Premier Processors, Inc. v. United States*, 775 F. Supp. 897, 907 (E.D. La. 1990)(obligee's right need not be liquidated at time of transfer); *Thomassie v. Savoie*, 581 So.2d 1031, 1035 (La. Ct. App. 1991)(judgment not required to bar finding that creditor injured); *Le Blanc v. American Employers Ins. Co.*, 364 So.2d 263, 266 (La. Ct. App. 1978)(creditor as of date of accident, not suit). The evidence at trial established that the assignment to James caused or increased Smith's insolvency. The district court correctly found that AREC is entitled to annul the transfer from Smith to James.[2]

---

[2] The counterclaim asserted against AREC sought to recover amounts already received by AREC for its services on behalf of Smith. This court previously concluded that pursuant to the Smith/AREC agreement, AREC was entitled to half the sum realized as a result of its collection activities. *Artists Rights Enforcement Corp. v. Smith*, No. 92-3307 (5th Cir. 1992). *Res judicata* therefore bars this claim. *Matter of Howe*, 913 F.2d 1138, 1143-44 (5th Cir. 1990). The district court properly dismissed the counterclaim.

To the extent e understand James's other complaints against the verdict, they are meritless. She may not collaterally attack the previous judgment in favor of AREC, and her observation that Smith attempted to transfer "ownership of copyrights," not "right to royalties" seems to state a truism. That transfer was properly annulled by the district court. The judgment in this case is not intended, however, to decide the separate questions raised by the pending interpleader action in New York.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.